

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BARBARA F. SANGRET,<br><br>Plaintiff,<br><br>vs.<br><br>GREYHOUND LINES, INC.,<br>JEFFERSON PARTNERS LIMITED<br>PARTNERSHIP & DOES 1–10,<br><br>Defendants. | CV 18–157–M–DLC<br><br><br>ORDER |

Before the Court is the Motion to Dismiss (Doc. 5) filed by Defendant Greyhound Lines, Inc. ("Greyhound"). Greyhound seeks to dismiss Plaintiff Barbara F. Sangret's ("Sangret") claims against Greyhound pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 1.) Greyhound indicates that Defendant Jefferson Partners Limited Partnership ("Jefferson") was contacted and does not oppose this Motion. (*Id.*) For the following reasons, Greyhound's Motion will be denied.

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Generally, courts may only consider the allegations in the complaint when ruling on a motion

-1-

to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 782–83 (9th Cir. 1996). Nonetheless, a court may dismiss a complaint if it lacks a cognizable legal theory. *Id.* at 783. Thus, in order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A claim has facial plausibility when a court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.*

Pursuant to the Complaint, on December 30, 2017, Sangret was traveling from Albuquerque, New Mexico, to Great Falls, Montana, on a bus operated by Greyhound. En route, the bus stopped at a terminal owned by Jefferson in Butte, Montana. During this layover in Butte, Sangret stepped outside the terminal, slipped, and fell on ice and snow that had not yet been cleared or addressed. Sangret alleges that both Jefferson and Greyhound, as common carriers, owed Sangret, as a passenger, the highest duty of care. Sangret alleges that both

-2-

breached that duty by negligently failing to maintain safe premises and, due to this failure, Sangret fell and was injured. (Doc. 4 at 1–2.)

Because this action was removed to federal district court under diversity jurisdiction, (Doc. 1 at 2–3), we apply the substantive law of Montana, the forum state. *Med. Lab. Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). Under Montana law, the plaintiff in a negligence action "must present facts which, if true, would show: (1) the existence of a legal duty from defendant to plaintiff; (2) a breach of that duty; (3) causation; and (4) damages to the plaintiff." *Willden v. Neumann*, 189 P.3d 610, 613 (Mont. 2008). "Actionable negligence arises only from a breach of a legal duty or obligation." *Zimmer v. California Co.*, 174 F. Supp. 757, 763 (D. Mont. 1959). "The question of whether a legal duty is owed by one person to another, as well as the scope of any such duty, are questions of law." *Webb v. T.D.*, 951 P.2d 1008, 1011 (Mont. 1997). Unlike questions of fact, questions of law are reserved for the court. *Willden*, 189 P.3d at 613 (citing *Webb*, 951 P.2d at 1011).

Here, Greyhound argues that its duty as a common carrier does not extend beyond carriage to include the safety of its passengers on premises outside its possession or control. (Doc. 10 at 2.) In her Complaint, Sangret alleges that Jefferson, not Greyhound, operated the terminal in Butte, Montana. (Doc. 4 at 2.)

Accordingly, Greyhound argues, it "had no duty to maintain the terminal in question, nor any duty to clear or otherwise address snow and ice conditions near the door of the terminal." (Doc. 6 at 5.) And "without any allegation that Greyhound was in possession and control of the premises at issue, Plaintiff has failed to establish the breach of a legal duty." (*Id.* at 4.)

Sangret responds that pursuant to Montana Code Annotated § 69–11–107, Greyhound's status as a common carrier "creates a heightened duty of utmost care" to its passengers. (Doc. 9 at 2–3.) Sangret asserts that Greyhound's "duty extends outside . . . conveyance" to ensuring the safety of its passengers "from the start of the journey to the end." (Doc. 9 at 3.) Because Sangret was "still on her journey" during the layover in Butte, she argues that Greyhound owed her this duty. (*Id.*)

The resolution of this Motion depends upon the question of whether or not a common carrier owes a duty to its passengers that extends beyond carriage to ensuring terminals are free from hazard. Montana Code Annotated § 69–11–107 provides that: "A carrier of persons for reward shall use the utmost care and diligence for their safe carriage, shall provide everything necessary for that purpose, and shall exercise to that end a reasonable degree of skill." Although the Court recognizes that this duty does not make the carrier "an insurer of the passenger's safety," *Wilson v. Northland Greyhound Lines, Inc.*, 166 F. Supp. 667,

-4-

669 (D. Mont. 1958), the Court is satisfied that the Montana Supreme Court's 1944 decision in *Ahlquist v. Mulvaney Realty Co.*, 152 P.2d 137 (Mont. 1944), although dated, establishes that a common carrier owes its passengers a duty to ensure that station premises are free of hazards.

In *Ahlquist*, the plaintiff, Isabelle Ahlquist, traveled to a bus depot owned by Mulvaney Realty Company and leased to several common carriers, including Northland Greyhound Lines and Burlington Trailways System, for the purpose of purchasing a ticket for transportation to Worland, Wyoming. While there, Ahlquist fell in the bathroom of the depot and sustained injuries. Ahlquist sought to recover damages for those injuries from Mulvaney Realty Company and Northland Greyhound Lines for their alleged negligence in keeping the bathroom in a safe condition. The Montana Supreme Court was tasked with determining what legal duty Northland Greyhound Lines and Mulvaney Realty Company owed to Ahlquist. As to the owner of the bus depot, Mulvaney Realty Company, the Court ultimately found that it owed Ahlquist "the legal duty to exercise reasonable care for her safety" because Mulvaney had agreed to maintain the facilities in a safe condition in its lease agreement with the common carriers. *Id.* at 148. With regard to Northland Greyhound Lines, the analysis was not so straightforward.

The Montana Supreme Court began its analysis with the following:

> A common carrier of passengers is under a duty to provide adequate station accommodations and proper safeguards at those places where it takes on and puts off passengers, and to keep its stations in a safe condition; its failure to perform its duty in this respect will render it liable to those who enter upon the premises, in response to an implied invitation, and suffer injury as a result of such neglect. The degree of care required of a common carrier in reference to the safe condition of its depot and station facilities, is . . . only reasonable or ordinary care. Its duty to keep the premises safe extends only to those parts thereof to which the public and passengers naturally resort or have been invited, and to which they necessarily or ordinarily go in boarding or leaving trains, and not to places to which they have no occasion to go, or beyond the station grounds. It has been said that the carrier's liability to passengers, with respect to the condition of its premises, is the same as that of any owner or occupant of premises to persons who by invitation or inducement come there to transact business.

*Id.* at 145 (internal quotation marks and citations omitted). Because the imposition of the duty depended upon the status of the plaintiff as either a passenger or invitee, the Court then turned to whether or not Ahlquist was an invitee of Northland Greyhound Lines. *Id.* Ultimately, the Montana Supreme Court found that Ahlquist was not an invitee of Northland Greyhound Lines because Ahlquist had proceeded to the bus depot to purchase a ticket to Worland, Wyoming—a destination that was not serviced by Northland Greyhound Lines but by Burlington Trailways Service. *Id.* at 145–47. Consequently, Ahlquist was an "intended passenger" of Burlington Trailways Service, not Northland Greyhound Lines. *Id.* at 147. And because Northland Greyhound Lines did not own the building, did not hold the position of lessor to the other common carriers, and did not have an

agreement with Burlington Trailways Service creating some semblance of agency, "privity of interest, right or relationship as between [them] . . . either in the establishment or the operation of the[] station and depot facilities," Northland Greyhound Lines did not owe any duty to Ahlquist. *Id.* "Simply stated, . . . the plaintiff sued the wrong person when she sued the Northland Greyhound Lines. . . . [S]he should have sued the Burlington." *Id.* at 147–48 (internal quotation marks omitted).

In this case, the Court is not convinced that Sangret has sued the wrong carrier. Unlike Ahlquist, Sangret was a current passenger of Greyhound at the time of the incident. Again unlike Ahlquist, Sangret has named both her contracted common carrier and the owner of the bus depot. While the Montana Legislature has since removed the significance of an injured party's status on the property,[1] there has been no express abrogation of the Montana Supreme Court's annunciation of a common carrier's duty in *Ahlquist*. And, under any analysis, Sangret was at the bus depot in Butte, Montana, solely because Greyhound made that location a stage of her journey to Great Falls, Montana. Indeed, as pointed out

---

[1] *See* Mont. Code Ann. § 27–1–701 ("Except as otherwise provided by law, each person is responsible not only for the results of the person's willful acts but also for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or person except so far as the person has willfully or by want or ordinary care brought the injury upon the person."); *see also Limberhand v. Big Ditch Co.*, 706 P.2d 491, 496 (Mont. 1985) ("The test is always not the status of the injured party but the exercise of ordinary care in the circumstances by the landowner.").

by Greyhound, the Montana statute imposing the burden of utmost care and diligence upon commons carriers in relation to their passengers is "'but declaratory of the common law.'" (Doc. 6 at 3 (quoting *Wilson*, 166 F. Supp. at 669).) As found by the Montana Supreme Court, this duty includes "provid[ing] adequate station accommodations and proper safeguards at those places where it takes on and puts off passengers, and to keep[ing] its stations in a safe condition." *Ahlquist*, 152 P.2d at 145 (internal quotation marks and citation omitted). As found by this Court, the layover location in Butte, Montana, is a location where Greyhound "takes on and puts off passengers." Therefore, the Court is convinced that Greyhound owed Sangret a duty to ensure its station was in a safe condition.

The Court's finding on this point is buttressed by the following. First, the plain language of § 69–11–107 provides that the carrier "shall provide everything necessary for [the] purpose" of safe carriage. It should go without saying that Greyhound's business of ferrying people across this vast nation necessitates that it have stations at which buses or drivers will change so as to avoid driver fatigue and allow Greyhound to acquire new customers for transport. Safe bus stations, therefore, appear to this Court to fall squarely within the Montana Legislature's broad assignment that common carriers "provide everything necessary" for safe carriage.

Second, Montana Code Annotated § 69–11–105(1) explicitly provides that Greyhound may limit its obligations as a common carrier by "special contract." To be sure, this appears to be precisely the type of agreement that was made between Northland Greyhound Lines and Mulvaney Realty Company with regard to the safekeeping and maintenance of the premises at issue in *Ahlquist*. Certainly, ownership of every bus station to which Greyhound "takes on and puts off passengers" would seem to not be the most economically efficient way for Greyhound to fulfill its obligations to passengers in light of this opportunity, and it is entirely conceivable that such an arrangement was in existence regarding the station in Butte, Montana.

Lastly, the Montana Supreme Court in *Rogers v. Western Airline*, 602 P.2d 171, 177 (Mont. 1979), stated that the duty of an airline, as an "air common carrier[]," is "a high degree of care (some courts say the highest degree of care) to the safe passage of [its] passengers. This standard of care extends to passengers embarking and debarking and while they are passing back and forth to and from the terminal." Although the statement was made in regard to "air common carriers" and without reference to § 69–11–107, the Court finds that it is helpful in that it shows a consistent perception by the Montana Supreme Court of a common

carrier's duty as including the maintenance of places where it "takes on and puts off passengers."

Before concluding, the Court finds it beneficial to address three arguments made by Greyhound in support of its Motion. First, Greyhound alleges that *Ahlquist* stands for the proposition that common carriers do not have liability when they do not own the station premises. Greyhound puts undue emphasis on the fact that the Court in *Ahlquist* defined the liability of common carriers in terms of "***its*** premises." (Doc. 6 at 4 (emphasis provided by Greyhound).) The Court is not convinced that the use of this determiner is indicative of the law in Montana regarding a common carrier's liability at a station which it does not own. Particularly in light of the subsequent analysis presented in *Ahlquist*—that Ahlquist's status as an invitee of a different leasee was determinative of Northland Greyhound Lines' liability—this argument is unavailing.

Second, Greyhound argues that the "expan[sion]" of a "carrier's duties far beyond 'carriage'" would "render absurd and unjust results" by making a carrier liable for any injury sustained in a "gas station bathroom, a restaurant lobby, or on a sidewalk located blocks away from the bus." (Doc. 10 at 1–2.) Again, the Court is unconvinced. The duty outlined above pertains only to a common carrier's

"depot and station facilities" which are distinct from gas stations, restaurants, and areas off of the station property.

Finally, Greyhound cites to cases from the Second Circuit, the Eastern District of Virginia, Maryland, and the Court of Common Pleas of Connecticut as evidence that courts "in other jurisdictions have refused to impose liability against defendant carriers who do not own, operate, or maintain a premises where a passenger is injured." (Doc. 6 at 4.) Again, because this action was removed to federal district court under diversity jurisdiction, the Court applies the substantive law of Montana, the forum state. The cases cited by Greyhound are consequently irrelevant.

The Court having found that Greyhound does have a duty to provide safe station facilities,

IT IS ORDERED that Greyhound's Motion to Dismiss (Doc. 5) is DENIED.

DATED this 22nd day of January, 2019.

Dana L. Christensen, Chief Judge
United States District Court